The answer of the defendants admitted that complainant proposed to them that they should become bound at the custom-house for the duties upon the cargoes of the vessels, and that he and they should jointly purchase at the sale of the wrecked property, and equally divide the profits arising therefrom; but they denied that they acceded to the proposition of an equal concern and division of profits in whatever purchases might be made beyond the sum of duties secured. They admitted that to the amount of the duties complainant was to be entitled to an equal share of the profits but alleged that in case the purchases exceeded the amount of duties, the benefit was to belong exclusively to that party by whom the advances for such purchases were made; and that in cases of purchases on their joint account the property should be placed in their hands, and the disposal thereof be wholly under their direction; and that whenever they should supply the funds to make purchases at said sales beyond the amount of duties secured, and should not themselves attend the sales, but leave the management of the business to complainant, he was to be entitled to an equal part of the profits arising from the purchase, as a compensation for his services in making the purchases; that if, when they or either of them attended a sale, and intended to purchase beyond the amount of *Page 60 
the duties secured, complainant thought proper to meet them with equal funds, he was to share equally in the profits (74) of such purchase; otherwise, in proportion to the sum which he should advance.
As to the running account of defendant for £ 94 8s. 7d., defendants answered that the same had been long due, and they were pressing complainant for payment; but he, alleging that he wished to apply some money in purchases for his own benefit at the said sales, they proposed, and complainant agreed to it, that complainant should retain the sum of £ 94 8s. 7d. and give them, not his note, but an accountable receipt for that sum; that he should invest the money in purchases at the said sales, and in consideration of his doing the business and making the payment at the sale, he should be entitled to half the profits on the purchase made with that sum; and this was done, not in consequence of a general agreement of equal concern in all purchases at the contemplated sales, but merely to close complainant's account.
They stated that they gave complainant instructions in writing, at the first sale, to invest the amount of Thomas' duties in purchases, pointing out the articles which he should buy and the prices he might venture to give. At this time it was not known that Roderique's vessel and cargo would be sold; but expecting that a sale might take place, complainant was instructed to invest the amount of Roderique's duties in such purchases; and they informed him that the profits arising from his purchases to the amount of the duties should be equally divided between them and him.
They admitted that upon complainant's return to New Bern he delivered to them the rum, sugar, and molasses charged in the bill, but they denied that he paid them $294 in cash, or any other sum. Captain Thomas paid this money, which, with the articles purchased by complainant, made up the amount of duties which Captain Thomas owed, and for which they had given their bond at the custom-house; and upon his making this payment, they gave him a discharge. They denied that (75) there was any agreement that complainant should be responsible for one-half of the duties.
They admitted that in February there were deposited with them, under the inspection of complainant, Captain Roderique and his seamen, thirty-nine boxes of segars, belonging to the captain, and thirty-one boxes and one bocket of segars and four bags of tobacco belonging to the seamen. On the 11th of that month the seamen called at their store and offered to sell their segars and tobacco. They were foreigners, and there was a *Page 61 
difficulty in understanding them. Complainant came in and acted as interpreter, and a bargain was concluded. They denied that complainant was entitled to any participation in that purchase; that he either introduced the seamen to them or had any agency in making the bargain, except in acting as interpreter. That neither he nor they were precluded, by any agreement between them, from employing any sum which either might think proper to advance, in purchases of wrecked property, while there remained sufficient to invest the amount of duties on their joint account; and complainant purchased for his own use, of Captain Roderique, articles to the amount of $103.
They admitted their agency for Captain Roderique, but expressly denied any agreement that complainant was to share the commissions. They agreed that in consideration of his having recommended them to the agency, he should have the profits which would arise from purchases to the amount of the commissions. They admitted the purchases at Captain Roderique's sale, the delivery of the goods in New Bern, the arrival there of the agent of the owners, the settlement with him, the amount of commissions received, and the payment to them of $500 by complainant.
As to the award charged in the bill, the defendants gave a history of it, and insisted that it was not in any way binding on them.
Upon the hearing of this case the following issues (76) were submitted to a jury, to wit:
1. Was there an agreement between the complainant and defendants as to the division of the profits to arise from the purchase and sale of the articles in complainant's bill set forth; and what was that agreement?
2. Was there any agreement as to the division of the commissions on the agency for Roderique's vessel; and what was that agreement?
3. Was there any award which settles the principles on which a division of profits should be made; and what was that award?
The jury found that there was an agreement between the complainant and defendants as to the division of the profits mentioned in the first issue; and that agreement was that the said profits should be equally divided between the complainant on the one part and the defendants on the other. They further found there was no agreement as to the commissions mentioned in the second issue; and that there was no such award as is mentioned in the third issue.
The presiding judge, in his charge to the jury, said that if an agreement for a common or special partnership appeared to *Page 62 
have existed between the parties for the purchase of any property at the sales set forth in the bill and answer, with intent to sell the same for the profits of the parties, and no express agreement was proved, adjusting the division or share of the profits, the law was that the contract extended to all the goods purchased by one of the parties at the time of the sales, and that the parties were entitled equally to share the profits without regard to the payments or advances made by either of them for the purpose of effecting the purchase, there being no contract as to the amount of the advances to be made respectively. A rule for a new trial was obtained, on the ground that the charge was incorrect in law. The rule was sent to this Court.
The presiding judge laid down the (77) law correctly in his charge to the jury. The rule must be discharged.
Cited: Worthy v. Brower, 93 N.C. 349.